```
                    IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                            STATESVILLE DIVISION
                              5:05CV255MU-02
```

MELANIE SAMMONS ANDERSON,          )
    Petitioner,                    )
                                   )
    v.                             )           **ORDER**
                                   )
**WARDEN OF N.C. STATE PRISON,**   )
    Respondent.                    )
_____)

**THIS MATTER** comes before the Court on petitioner's "Response Explaining Why Petition Was Timely Filed," filed November 3, 2005. For the reasons stated here, such Response will be construed as a request for reconsideration, and will be denied.

According to this Court's record, the petitioner filed a Petition under 28 U.S.C. §2254 for Habeas Corpus relief on September 26, 2005.[1] Such Petition was not at all informative concerning the procedural history of the petitioner's underlying State court case.

---

[1] Although the Court's two earlier Orders erroneously reported that the petitioner's Petition was filed in this Court on August 8, 2005, review of the envelope in which the undated Petition was submitted actually reflects that such Petition was not even received in this Court until September 26, 2005, which is also the date on which it was filed with the Court. Indeed, a careful review of the documents submitted by the petitioner tend to establish that her Petition could not have been filed on August 8, 2005. That is, in addition to the September 26, 2005 "received" stamp on the envelope in which the Petition was submitted, this record also contains the petitioner's undated IFP Application and her Inmate Trust Account Statement, which documents were submitted along with the subject Habeas Petition. That Trust Account Statement shows that it was prepared for the petitioner on September 14, 2005--that is, well after the August 8, 2005 date to which this Court previously pointed. Thus, the Court must conclude that September 26, 2005 is the date on which this Petition was filed.

In fact, the most that could be determined upon the Court's initial review was that on some undisclosed occasion, the petitioner was convicted of First-Degree Murder in the Superior Court of Wilkes County. Upon her conviction, the State trial court sentenced the petitioner to death. However, the Petition reported that at some other unspecified time, the petitioner's death sentence was vacated (reportedly by the State Court of Appeals), and she was given a term of life imprisonment without the possibility of parole. The Petition also indicated that the State sought <u>certiorari</u> review of that decision, but on August 11, 2004, the Supreme Court of North Carolina denied the State's Petition. Beyond that, the Petition did not note any other review of this case.

Instead, the petitioner submitted the subject federal Petition for a Writ of <u>Habeas Corpus</u> to this Court. By that Petition, the petitioner argued that she had been subjected to two instances of ineffective assistance of counsel. However, upon an initial review of that document, this Court opined, due to the petitioner's omission of the above-noted critical information, that it could not determine whether or not such Petition had been timely filed. Accordingly, on October 6, 2005, this Court entered an Order, pursuant to <u>Hill v. Braxton</u>, 277 F.3d 701, 706 (4th Cir. 2002), giving the petitioner 30 days in which to provide the missing information, and thereby avoid summary dismissal. By the terms of that <u>Hill</u> Order, the petitioner's

response was due no later November 6, 2005.

In addition, the Court's Hill Order noted that the petitioner had failed to pay the $5.00 filing fee; and that her IFP Application could not be granted.[2] Therefore, the Court's Order of October 6, 2005 also directed the petitioner to submit her $5.00 filing fee to the Court within that same 30-day deadline.

Although the petitioner's written Response was, in fact, timely received in the Clerk's Office on November 3, 2005, for some inexplicable reason, that Response was not filed and/or entered on the record until November 22, 2005. Thus, when the Court reviewed the file of this matter on November 16, 2005--believing that it graciously had given the petitioner an additional ten days in which to submit her response and fee--the Court was under the mistaken impression that the petitioner had not responded to either of the directives set forth in its Hill Order.

Consequently, using the information which the Court then had before it, it determined that the petitioner's Petition was time-barred and, furthermore, that such Petition was subject to dismissal for the petitioner's failure to pay the $5.00 filing fee. Accordingly, the petitioner's case was dismissed.

However, on November 22, 2005, the Court was advised by personnel from the Clerk's Office that the petitioner actually

---

[2]The petitioner submitted a financial statement to the Court reflecting that she petitioner was employed at her correctional facility; and that within the six months preceding the submission of her IFP Application, she occasionally had account balances which totaled more than $100.00.

had timely filed her Response to its Hill Order.  Nevertheless, inasmuch as this matter still was properly dismissed for the petitioner's failure to pay the $5.00 filing fee, the Court has treated the petitioner's Response as a request for reconsideration.  In any case, the Court has determined that the information set forth in the petitioner's Response fully supports its earlier conclusion that the petitioner's Petition was untimely filed.  Therefore, the petitioner's request for reconsideration must be denied.

To be sure, the petitioner's Response reports that on September 16, 1996, she was convicted of both First Degree Murder and Felonious Child Abuse; and that on the occasion of her convictions, the trial court sentenced her to death plus three years imprisonment for the two convictions.  Next, the Response reports that the petitioner's convictions and sentences were affirmed by the State Supreme Court on April 9, 1999 (see North Carolina v. Anderson, 350 N.C. 152 (1999)).  The Response further indicates that the petitioner sought a Petition for a Writ of Certiorari in the U.S. Supreme Court, but her Petition was denied on November 1, 1999 (see Anderson v. North Carolina, 528 U.S. 973 (1999)).

Pursuant to relevant principles of the Antiterrorism and Effective Death Penalty Act of 1996, the petitioner had one year from the date on which her direct review became final in which to file the instant federal Habeas Petition.  See 28 U.S.C. §2244-(d)(1) (noting the AEDPA's one-year limitation for petitions

challenging a state conviction and/or sentence); see also Wilson v. Greene, 155 F.3d 396, 400 (4th Cir. 1998) (noting that the one-year clock starts to run on the date that the Supreme Court denies the petition for certiorari review).

Thus, under the AEDPA, the petitioner's convictions and sentences became final on November 1, 1999--that is, the date on which her pursuit of direct review was concluded in the U.S. Supreme Court. Furthermore, in the absence of any time during which the one-year limitation period could have been tolled, the petitioner would have been required to file her federal Petition on or before November 1, 2000.

However, the petitioner's Response notes that on October 2, 2000--a mere thirty days before the expiration of her 1-year limitations period, she began her pursuit of collateral review by filing a Motion for Appropriate Relief ("MAR" hereafter) in the Superior Court of Wilkes County. Such Motion apparently was unsuccessful, thus precipitating the petitioner's filing of a second MAR on January 31, 2002. The petitioner's second MAR reportedly also was denied. Then, on February 27, 2003, the State Supreme Court denied the petitioner's Petition for a Writ of Certiorari (see State v. Anderson, 356 N.C. 679 (2003).

Apparently, however, at some point the petitioner filed yet a third MAR, and in April 2003, the State trial court held an evidentiary hearing for that matter. That time, the trial court granted the petitioner's MAR, and "committed [her] to life in

prison without parole."  Then, as the petitioner did manage to indicate in her habeas Petition, the State attempted to challenge her new sentence, but on August 11, 2004, the State Supreme Court rejected the State's Petition for a Writ of Certiorari.  According to the petitioner, no further review was sought by either party.

Consequently, although the one-year limitations period clearly was tolled during the entire time that the petitioner was pursuing collateral review, by the time that she commenced that review, she already had allowed 335 days to elapse from her one-year federal limitation period.  Thus, using the dates provided by the petitioner, she had only 30 remaining days in her limitations period at the time that her collateral review was concluded on August 11, 2004.  Ultimately, then, the petitioner's federal Petition had to be filed in this Court no later than September 10, 2004.

As has been noted, however, a review of the envelope in which the petitioner's undated Habeas Petition was submitted to this Court reflects that the same was not received and filed here until September 26, 2005.  Therefore, the petitioner's Petition was not timely filed.

Furthermore, even assuming, as the petitioner contends, that her one-year limitation period must be calculated from August 11, 2004--the date on which her successful collateral review was finally concluded, such fact would not change this Court's deter-

mination that the Petition was untimely filed.  Indeed, as was previously explained, the petitioner's Petition was not received and filed in this office until September 26, 2005 which, in any event, still was 49 days past the August 11, 2005 deadline for which the petitioner argues.

Finally, the Court has reviewed the additional information set forth in the petitioner's Response in order to determine whether those matters present sufficient cause to equitably toll her limitations deadline.  In particular, the Court notes that in her Response, the petitioner points out that she is retarded; that she did not have copies of her "court-related documents"; that she does not have an understanding of the applicable laws; and that the only assistance she has received with her filings has come from untrained family members and friends.

While the Court is not unsympathetic to the petitioner's representations, such matters simply do not rise to the level of establishing a basis for equitable tolling.  That is, the Fourth Circuit Court of Appeals has stated that such tolling is allowed only in "those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitations period against the party and gross injustice would result."  Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2004) (en banc), cert. denied, 125 S.Ct. 209 (2004).  See also United States v. Sosa, 364 F.3d 507, 511-13 (4th Cir. 2004). Here, it appears that the petitioner miscalculated her deadline

date, and that she failed, in any case, to meet her own self-imposed date.  Therefore, equitable tolling is not available for the petitioner.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the petitioner's "Response Explaining Why Petition Was Timely Filed," which has been construed as a request for reconsideration, is <u>denied</u>.

**SO ORDERED.**

**Signed: December 5, 2005**

Graham C. Mullen
Chief United States District Judge